IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**OTIS OLIVER MCCRAY**                                                               **PLAINTIFF**

**V.**                                                                                                     **NO. 4:17CV115-RP**

**MISSISSIPPI DEPARTMENT OF CORRECTIONS, ET AL.**            **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Otis Oliver McCray, proceeding *pro se* and *in forma pauperis*, filed suit under 42 U.S.C. § 1983 against the Mississippi Department of Corrections ("MDOC") and Dr. Paxton Paige[1] ("MDOC Defendants"), and against contract medical providers Dr. Woods and H.S.A. H. Williamson ("Centurion Defendants"), alleging that they have denied him appropriate medical care. Defendant MDOC has moved to dismiss this action based on immunity, and the remaining Defendants have moved for summary judgment under Federal Rule of Civil Procedure 56. McCray has filed a response in opposition to the motions for summary judgment. Having reviewed the submissions and arguments of the parties, as well as the applicable law, the Court finds that Defendants' motions should be granted.

**I**
**Plaintiff's Allegations & Background Facts**

McCray, an inmate housed at the Marshall County Correctional Facility ("MCCF"), alleges that he suffers with a prolapsed rectum that MDOC refuses to treat with surgery. He also complains that he was diagnosed with Hepatitis C in early 2017, and that following his diagnosis, MCCF employees Dr. Woods, Dr. Paxton Paige, and H.S.A. H. Williamson denied

---

[1] Although McCray identifies Defendant Paige as "Dr. Paxton Paige," Paxton Paige is in fact not a medical professional, but rather, a Health Care Administrator at a facility in Pearl, Mississippi. *See* Doc. #57-1.

him Hepatitis C treatment. He asks the Court to award him monetary damages and order Defendants to provide him with the necessary medical treatment.

On December 5, 2017, MDOC moved to dismiss this action, alleging that it was immune from suit pursuant to the Eleventh Amendment. *See* Doc. #26. A motion for summary judgment was subsequently filed by Dr. Paxton Paige, identified by Defendants as "Paxton Paige," asserting the defenses of sovereign and qualified immunity. *See* Doc. #57. On April 16, 2018, Dr. Woods and H.S.A. H. Williamson each filed separate motions for summary judgment. Doc. #60 & Doc. #63. McCray filed his response in opposition to the motions for summary judgment on April 30, 2018. Doc. #70. The Centurion Defendants filed their reply to McCray's response on May 7, 2018. Doc. #73.

## II
## Summary Judgment Standard

Summary judgment is proper only when the pleadings and evidence, viewed in a light most favorable to the nonmoving party, illustrate that no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a),(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is deemed "material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (citation and internal quotation mark omitted). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)).

Once the motion is properly supported with competent evidence, the nonmovant must show that summary judgment is inappropriate. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998); *see also Celotex*, 477 U.S. at 323. That is, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986); *Beck*, 204 F.3d at 633. The plaintiff cannot meet this burden with "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), "conclusory allegations," *Lujan v. National Wildlife Federation*, 497 U.S. 871, 871-73 (1990), "unsubstantiated assertions," *Hopper v. Frank,* 16 F.3d 92 (5th Cir. 1994), or by a mere "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.,* 14 F.3d 1082 (5th Cir. 1994). It would undermine the purposes of summary judgment if a party could defeat such a motion simply by "replac[ing] conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). Therefore, in considering a motion for summary judgment, a court must determine whether the non-moving party's allegations are *plausible*. *Matsushita,* 475 U.S. at 586. (emphasis added).

Once the court has "determined the relevant set of facts and drawn all inferences in favor of the nonmoving party *to the extent supportable by the record*, . . . [the ultimate decision becomes]. . . a pure question of law." *Scott v. Harris*, 550 U.S. 372, 381 n.8 (2007) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on the motion for summary judgment." *Id.* at 380.

## III
## Sovereign Immunity

The MDOC Defendants have asserted the defense of sovereign immunity as to the claims against them in their official capacities.[2] The Eleventh Amendment to the United States Constitution bars suits by private citizens against states in federal courts unless the particular

---

[2] The Court notes that MDOC's motion is filed pursuant to Federal Rule of Civil Procedure 12(b)(1), while Defendant Paige has filed his motion pursuant to Federal Rule of Civil Procedure 56. Rule 12(b)(1) allows a party to assert the defense of lack of subject-matter jurisdiction, which requires the plaintiff to prove jurisdiction exists to prevent the court from dismissing the case for lack of statutory or constitutional authority to hear the issue. *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001); *Home Builders Assn. of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

state has waived its immunity or Congress has abrogated the state's sovereign immunity. U.S. Const. Amend XI; Perez v. *Region 20 Educ. Service Center*, 307 F.3d 318, 326 (5th Cir. 2002). Mississippi has not waived its sovereign immunity. *See* Miss. Code Ann. §11-46-5(4) ("Nothing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution of the United States."). "MDOC is considered an arm of the State of Mississippi" and is immune from suit. *Williams v. Miss. Dep't of Corrections*, No. 3:12cv259-CWR-FKB, 2012 WL 205210,1 at *1 (S. D. Miss. June 6, 2012); *see also* Miss. Code Ann. § 47-5-1, *et seq*. Accordingly, the MDOC Defendants are entitled to Eleventh Amendment immunity.[3]

## IV
## Individual Capacity Claim Against Paxton Paige

McCray has alleged that Defendants, including Paxton Paige, have denied him necessary medical treatment. However, the competent summary judgment evidence demonstrates that Paige is not a medical doctor and has never had any involvement in McCray's medical treatment. Doc. #57-1. Rather, Paige is the MDOC Health Services Administrator stationed at the Central Mississippi Correctional Facility ("CMCF") in Pearl, Mississippi, and has never been stationed at MCCF, where the events giving rise to this lawsuit allegedly occurred. *Id*. Accordingly, Paige's absence of involvement in any of McCray's medical treatment decisions entitle him to be dismissed from this lawsuit. *See, e.g. Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

## V
## Denial of Medical Care

McCray's constitutional right to medical care was abridged only if officials were deliberately indifferent to his serious medical needs, as deliberate indifference to an inmate's

---

[3] An exception to sovereign immunity exists in cases of prospective injunctive relief. *See, e.g., Ex Parte Young*, 209 U.S. 123 (1908). Therefore, McCray's claim for prospective injunctive relief in the form of medical care is not barred by sovereign immunity. The Court addresses McCray's medical care claims in Parts IV and V, *infra*.

serious medical needs violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1978). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839-40 (1994). Under this standard, a state actor is not liable under § 1983 unless the plaintiff alleges facts which, if true, would demonstrate that the prison official (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. at 847.

Negligent conduct by a prison official, however, does not give rise to a constitutional violation. *Daniels v. Williams*, 474 U.S. 327 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990). In fact, even if physicians misdiagnose or mistreat the plaintiff's condition in what amounts to medical malpractice, a prisoner cannot sustain a §1983 claim without a showing of deliberate indifference. *See, e.g., Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991) (finding medical malpractice alone does not support § 1983 cause of action). In addition, a plaintiff's disagreement with the course of medical treatment chosen will not support a claim of deliberate indifference. *See, e.g., Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 2001); *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001). Rather, liability under the deliberate indifference standard requires the plaintiff to produce evidence "that prison officials' 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Davidson v. Texas Dept. of Crim. J.*, 91 F. App'x 963, 965 (5th Cir. 2004) (citation omitted); *see also Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (holding that deliberate indifference requires the inmate to show that prison officials engaged in conduct "that would clearly evince a wanton disregard for any serious medical needs").

### A. Medical Treatment for Hepatitis C

On March 24, 2017, McCray filed an Administrative Remedy Process ("ARP") grievance alleging that Dr. Woods diagnosed him with Hepatitis C but failed to provide appropriate

treatment. Doc. #67-1 at 4. H.S.A. H. Williamson provided a response to the grievance on July 7, 2017, advising that McCray is receiving chronic care services and will be referred to a liver specialist as necessary. *Id*. at 6. Unsatisfied with this response, McCray continued to the second step of the ARP process. *Id*. at 8. Dr. Woods provided a response on July 21, 2017, advising that McCray is being monitored, that his APRI (liver) score does not currently indicate a need for treatment, and that he will be referred to a liver specialist if such a referral becomes necessary. *Id*. at 9.

Williamson and Woods' responses are corroborated by McCray's medical records from January 2017 through August 2017 — the time frame between when McCray alleges he was diagnosed with Hepatitis C and when he filed the instant lawsuit. *See* Doc. #67. The records demonstrate that frequent lab work is conducted to monitor McCray's medical conditions, and the lab work indicates that McCray's Hepatitis C condition has improved such so as to indicate a "low lik[e]lihood of disease progression" that caused Dr. Woods to conclude that he "will not be a candidate for Hep C treatment based on criteria by MDOC." Doc. #67 at 80. This was noted by Dr. Woods in her ARP response, as she stated that McCray's condition "has improved in the last few months." Doc. #67-1. The records also demonstrate that chronic care examinations are conducted every few months to monitor McCray's condition. *See, e.g.* Doc. #67 at 23, 103.

Additionally, McCray's medical records demonstrate that he was examined and treated by Dr. Woods and other providers on numerous occasions for a variety of medical complaints, including hemorrhoids[4] and Hepatitis C. *See* Doc. #67 at 4-6 (hemorrhoids), 7 (hemorrhoids, bumps, and ear pain), 9 (hemorrhoids), 13-19 (hemorrhoids, flat feet), 23 (Hepatitis C, skin conditions), 27 (Hepatitis Chronic Care Clinic), 27 (Hepatitis C), 36 (nodules on flank), 37 (ears), 38-39 (foot exam/orthopedic consult scheduled), 42 (cold, cough, sore throat, prostate

---

[4] There is no mention of a diagnosis of rectal prolapse in any of McCray's medical records. *See, generally*, Doc. #67.

problems), 45-46 (Hepatitis C, nodules, prostate), 49 (orthopedic shoes), 49-51 (surgery consult), 52 (head pain, blurred vision, eye exam request), 56 (optometry exam), 60 (acne), 62-63 (off-site surgery to excise nodules/cysts), 65 (post-surgery exam), 68 (post-surgery follow up), 72 (Hepatitis C clinic) 81-82 (Hepatitis C, hemorrhoids, acne), 89-91 (prelockup exam and treatment following use of force incident), and 97-98 (hemorrhoids). Moreover, as a result of these visits to medical, McCray was provided with numerous medications to alleviate his symptoms, including: hemorrhoid cream, milk of magnesia, Rocephin, Bactrim, Colace, Lubriderm, A&D ointment, Guaifenesin, Ibuprofen, Chlorphen, Peroxide, and acne treatment gel. *Id*. at 6, 7-8, 23, 43, 61, 91, and 98.

In response to the proof offered by Defendants, McCray brings up other ailments and conditions not addressed in his complaint, including an allegation that he suffered pain as a result of being beaten by prison officials. Doc. #70 at 19, 21. These allegations are not properly before the Court. *Cutera v. Bd. Of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005) ("A claim which is not raised in the complaint, but, rather, is raised only in response to a motion for summary judgment is not properly before the court."). Regardless, there's no evidence that the Defendants assaulted him or were deliberately indifferent in response to any ailments following the alleged beating. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994) (holding that "unsubstantiated assertions are not competent summary judgment evidence").

Based on the competent summary judgment evidence before the Court, it is apparent that McCray is being provided treatment for his medical complaints, including his diagnosis of Hepatitis C. McCray's medical records indicate an ongoing course of treatment, and his allegations to the contrary fail to satisfy the deliberate indifference standard. *See Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) ("Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference."); *Harris v. Epps*, 523 F. App'x 275, 275 (5th Cir. 2013) (affirming summary judgment where

inmate's medical records indicated he had received ongoing medical treatment). Defendants are entitled to summary judgment as to this claim.

### B. Exhaustion of Remedies

The Centurion Defendants also claim that McCray's lawsuit should be dismissed, as he has failed to exhaust his administrative remedies with regard to his claim that he is being denied surgical treatment for a rectal prolapse.[5]

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). The Mississippi Department of Corrections has been granted the statutory authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this authority, it has established an Administrative Remedy Program ("ARP") through which an inmate may seek formal review of a complaint or grievance relating to any aspect of his incarceration. *See* Miss. Code Ann. § 47-5-801. The ARP process is a two-step process that begins when an inmate first submits his grievance in writing to the prison's legal claims adjudicator within thirty days of the complained of incident. *Howard v. Epps*, No. 5:12CV61-KS-MTP, 2013 WL 2367880, at *2 (S.D. Miss.May 29, 2013). The adjudicator screens the grievance and determines whether to accept it into the ARP process. *Id.* If accepted, the grievance is forwarded to the appropriate official who then issues a First Step Response to the complaining inmate. *Id.* If the inmate is unsatisfied with the first response, he may continue to the Second Step by completing an appropriate ARP form and sending it to the legal claims

---

[5] The Court notes that this defense was not raised by MDOC, even though McCray claimed that MDOC was responsible for refusing treatment of his alleged rectal prolapse. However, the defense was raised by the Centurion Defendants. Since McCray has had an opportunity to respond to the asserted defense, the Court finds the defense equally applicable to the MDOC Defendants. *See, e.g.,* Rule 56(f).

adjudicator.  *Id*.  The Superintendent, Warden or Community Corrections Director will then issue a final ruling, or Second Step Response, which completes the ARP process.  *Id*.  If the inmate is unsatisfied with that response, he may file suit in state or federal court.  *Id*.

The exhaustion requirement is mandatory.  *Porter v. Nussle*, 534 U.S. 516, 524 (2002).  It "applies to all inmate suits about prison life" and must be adhered to "irrespective of the forms of relief sought and offered through administrative avenues."  *Id*. at 532; *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  The Fifth Circuit has held that "[d]istrict courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint."  *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir.2012); *see also Days v. Johnson*, 322 F.3d 863, 866 (5th Cir. 2003) (holding that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement).

McCray exhausted his administrative remedies with regard to Hepatitis C.  McCray's relevant ARP records do not, however, mention his allegedly prolapsed rectum.  McCray's failure to raise the prolapsed rectum issue has deprived Defendants of "a fair opportunity to address the problem that will later form the basis of the lawsuit."  *Johnson v. Johnson*, 385 F.3d 503, 517 (5th Cir. 2004).  Therefore, Defendants are entitled to summary judgment with regard to this claim.

## VI
## Failure to Comply

By Order entered on January 25, 2018, McCray was ordered to file his witness and exhibit lists with the Court no later than February 28, 2018.  Doc. #42 at ¶2.  This Order cautioned McCray that failure to file either list would result in the dismissal of his case.  *Id*.  Despite this warning, McCray has failed to submit either a witness or exhibit list in this action.  Therefore, the Court finds that dismissal is otherwise appropriate in this action under Federal Rule of Civil Procedure 41(b) for McCray's failure to comply with an order of the Court.

# VII
# Conclusion

MDOC and Paxton Paige are entitled to sovereign immunity as to the official-capacity claims asserted by McCray, and Paige is otherwise not liable for any wrongdoing alleged in this action. Moreover, the evidence does not show that the actions of any Defendant violated any clearly established constitutional right of McCray with regard to his Hepatitis C treatment, and McCray has failed to establish that any Defendant acted with deliberate indifference to his constitutional rights. Additionally, McCray failed to exhaust his prolapsed rectum claim against any named Defendant. Accordingly, Defendants are entitled to summary judgment as to McCray's claims. Finally, McCray failed to comply with the scheduling order of this Court, and dismissal of this action is, therefore, otherwise appropriate.

For these reasons, MDOC's motion to dismiss [26] is **GRANTED**, and Defendants' motions for summary judgment [57][60][63] are **GRANTED**. All Defendants are entitled to dismissal. A separate final judgment in accordance with this Memorandum Opinion and Order will enter today.

**SO ORDERED** this the 17th day of May, 2018.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE